# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

ERIC AICHER,

    Plaintiff,

vs.                                                              No. 18-cv-474 RB/SMV

NEW MEXICO DEPARTMENT
OF CORRECTIONS, *et al.*,

    Defendants.

## **MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff's *Pro Se* Tort Complaint (Doc. 1-1). Also before the Court are various miscellaneous motions filed by Plaintiff and Defendants (Docs. 7; 13; 30; 31; 33; 37; 40; 41; 44; 47.) Plaintiff contends prison officials failed to protect him from assault and were deliberately indifferent to his medical needs. Having reviewed the matter *sua sponte* under 28 U.S.C. § 1915A, the Court will dismiss the Complaint, grant leave to amend, and deny all further relief.

**I.    Background**[1]

In 2015, Plaintiff was incarcerated at the Lea County Correctional Facility (LCCF). (Doc. 1-1 at 1.) On October 5, 2015, a fellow inmate (John Archibeque) attacked Plaintiff. (*Id.*) Archibeque struck Plaintiff with a cane and repeatedly punched and kicked his face. (*Id.*) A friend helped Plaintiff return to his cell, where he collapsed. (*Id.*) A correctional officer allegedly passed by Plaintiff's door, looked in, and "continued without noticing [Plaintiff]." (*Id.*)

---

[1] The background facts are taken from Plaintiff's complaint (Doc. 1-1) and the relevant supplements thereto (Doc. 39, 56-58). For the limited purpose of this ruling, the Court assumes Plaintiff's allegations are true.

Plaintiff regained consciousness as he was transported to the medical unit. (*Id.* at 2.) Thereafter, his blood pressure dropped and prison officials sent him to the hospital. (*Id.*) The doctor bandaged his head, prescribed pain medication, and referred him to a facial reconstruction specialist. (*Id.*) Plaintiff returned to LCCF's medical unit, where providers refused to dispense the prescription pain medication. (*Id.*) Plaintiff reported that the pain prevented him from chewing, and the doctor told him to "chew with smaller bites." (*Id.*) Over the next week, Plaintiff only received Tylenol, and LCCF medical officials failed to change his bandages or bedsheets. (*Id.* at 3.)

On or about October 13, 2015, Plaintiff underwent a facial reconstruction surgery at St. Vincent Hospital. (*Id.*) He then spent about 23 days in the recovery unit of a prison hospital. (*Id.*) When he returned to LCCF on November 5, 2015, Captain Shepherd informed Plaintiff that he would be returning to the H4E-pod. (*Id.*) Archibeque, the attacker, was still living in a cell three doors down from Plaintiff. (*Id.*) Plaintiff spent the next month petitioning various captains, wardens, and caseworkers for a reassignment. (*Id.*) He eventually enrolled in a residential drug recovery program so that he could transfer to another pod. (*Id.*) According to news reports, other inmates have been attacked in New Mexico prisons due to understaffing. (Docs. 39; 56–58).

On April 18, 2018, Plaintiff filed his Complaint in New Mexico's First Judicial District Court, Case No. D-101-CV-2018-01224. (Doc. 1-1.) The Complaint lists three Defendants: (1) the New Mexico Department of Corrections (NMDOC); (2) the GEO Group, Inc.; and (3) Corizon Health Care (Corizon). (*Id.* at 9.) Plaintiff later filed two motions to amend the complaint to remove GEO Group, Inc. as a Defendant. (Docs. 40; 41.) The crux of Plaintiff's Complaint is that Defendants failed to protect him from attack and were deliberately indifferent to his medical needs following the attack. (Doc. 1-1 at 10.) Plaintiff seeks $133,333.30 cents in compensatory damages,

2

plus $50,000 dollars for all future medical expenses. (Docs. 44 at 2; 63 at 2.)

Defendant Corizon removed the Complaint to Federal Court on May 22, 2018. (Doc. 1.) In response to Plaintiff's discovery requests, the Court (Hon. Stephan Vidmar) entered two Orders explaining: (1) prisoner petitions are exempt from initial discovery; and (2) the complaint is subject to *sua sponte* screening under 28 U.S.C. § 1915A. (Docs. 16; 29.) The Court granted a protective order and stated: "If any claim remains after the initial screening, the Court will determine *at that time* whether to allow Plaintiff 'to engage in the formal discovery process *or* to rely on the protection of a *Martinez* report . . . .'" (Doc. 29 at 2.)

Thereafter, the parties filed various dispositive and miscellaneous motions. Plaintiff moved to:

(a) Disqualify Hon. Robert Brack and Hon. Stephan Vidmar from this case (Doc. 13);

(b) Remand the case to state court (Doc. 7);

(c) Appoint counsel (Doc. 45);

(d) Obtain a default judgment (Docs. 31; 44; 47); and

(e) Amend the complaint (Docs. 40; 41).

Defendants moved for dismissal, or alternatively, summary judgment based on Plaintiff's failure to state a claim and exhaust administrative remedies. (Docs. 30; 33; 37.)

**II.      Recusal/Disqualification**

As an initial matter, Plaintiff seeks to disqualify Judges Brack and Vidmar from presiding over this case. The Motion to Recuse consists of one paragraph, which alleges Plaintiff "has de[a]lt with them recently in previous cases," and "as a result of this, he may not get an impartial judgment." (Doc. 13 at 1.) This allegation is facially deficient to warrant recusal by any judge.

Plaintiff gives no indication of the "facts . . . [or] reasons for the belief that bias or prejudice exists," as required by 28 U.S.C. § 144. *See also Green v. Dorrell*, 969 F.2d 915, 919 (10th Cir. 1992) (noting that a "judge must not proceed further when a party makes and files a *timely* and *sufficient* affidavit that the first judge has a personal bias or prejudice."). It is also well settled that "prior adverse rulings or the judge's familiarity with a defendant are not enough" to demonstrate impartiality under 28 U.S.C. § 455. *Diaz v. King*, 687 F. App'x 709, 713 (10th Cir. 2017) (citing *United States v. Cooley*, 1 F.3d 985, 994 (10th Cir. 1993)). The Court will, therefore, deny the Motion to Recuse (Doc. 13).

### III. Remand

In another preliminary motion, Plaintiff asks the Court to remand the case to the First Judicial District Court. (Doc. 7.) Remand is available when the removal is procedurally defective or the Federal Court lacks subject matter over Plaintiff's claims. *See* 28 U.S.C. §§ 1446, 1447(c). Plaintiff has not pointed to any technical defects, and the record indicates the removal was procedurally proper. (Docs. 1-1; 1-2.) The Complaint raises claims "under the United States Constitution," which is sufficient to establish subject matter jurisdiction in this case. (Doc. 1-1 at 10.) *See also Karnes v. Boeing Co.*, 335 F.3d 1189, 1192 (10th Cir. 2003) (Subject-matter jurisdiction exists where the face of the complaint raises a federal question.).

Plaintiff argues he should be permitted to litigate in state court because he: (1) may have more rights under state law; (2) can appear telephonically in state court; and (3) cannot afford the $400 federal filing fee. (Doc. 7 at 1–2.) The Court appreciates Plaintiff's preference and understands he dismissed an earlier federal case to refile in state court. (*See id.* at 6.) Nevertheless, Defendants are entitled to proceed in federal court where, as here, the requirements of 28 U.S.C. §

4

1446 are met. If this case proceeds beyond screening and a hearing is held, Plaintiff may request permission to appear telephonically.[2] Further, Plaintiff is not obligated to pay any filing fee in a removed case. *See Woodson v. McCollum*, 875 F.3d 1304, 1306 (10th Cir. 2017). The Motion to Remand (Doc. 7) will be denied.

IV.     **Screening the Complaint under Section 1915A**

Before addressing any remaining dispositive motions, the Court must screen Plaintiff's Complaint and, if appropriate, determine whether to grant leave to amend. When a plaintiff is incarcerated, 28 U.S.C. § 1915A requires the Court to dismiss any claims that "fail[] to state a claim on which relief may be granted." 28 U.S.C. § 1915A(b). In other words, the Complaint must contain "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Because Plaintiff is *pro se*, his "pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall*, 935 F.2d at 1110. While *pro se* pleadings are judged by the same legal standards that apply to represented litigants, the Court should overlook the "failure to cite proper legal authority, . . . confusion of various legal theories, . . . poor syntax and sentence construction, or . . . unfamiliarity with pleading requirements." *Id.* Further, *pro se* plaintiffs should ordinarily be given the opportunity to cure defects in the original

---

[2] For clarification, the Court is not guaranteeing such request will be granted. Telephonic appearances are permitted at the discretion of the presiding judge, based on the individual circumstances of the case.

complaint, unless amendment would be futile. *Id.* at 1109.

The Complaint raises federal constitutional claims under the Eighth Amendment and the Due Process Clause. (Doc. 1-1 at 10–11.) Section 1983 of title 42 is the "remedial vehicle for raising claims based on the violation of constitutional rights." *Brown v. Buhman*, 822 F.3d 1151, 1162 n.9 (10th Cir. 2016). "A cause of action under section 1983 requires the deprivation of a civil right by a 'person' acting under color of state law." *McLaughlin v. Bd. of Trustees*, 215 F.3d 1168, 1172 (10th Cir. 2000). The plaintiff must allege that each government official, through the official's own individual actions, has personally violated the Constitution. *See Trask v. Franco,* 446 F.3d 1036, 1046 (10th Cir. 1998). There must also be a connection between the official conduct and the constitutional violation. *Fogarty v. Gallegos,* 523 F.3d 1147, 1162 (10th Cir. 2008); *Trask,* 446 F.3d at 1046.

Applying these standards, the Court finds the Complaint fails to state a cognizable claim against the remaining Defendants (NMDOC and Corizon).[3] The Tenth Circuit has held the "New Mexico Department of Corrections is not a 'person' subject to suit under § 1983." *Blackburn v. Dep't of Corr.*, 172 F.3d 62 (10th Cir. 1999); *see also Jordan v. Doe*, 15 F. App'x 564, 566 (10th Cir. 2001) (same). Further, a private corporation acting under the color of state law is only liable under § 1983 when the corporation's official policy or custom caused a deprivation of constitutional rights. *See Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782 (10th Cir. 1993) (A private corporation performing a government function can be held liable under § 1983 only where a plaintiff shows "1) the existence of a . . . policy or custom, and 2) that there is a direct causal link

---

[3] The Court did not screen the claims against GEO Group, since Plaintiff acknowledged he cannot maintain a § 1983 claim against that Defendant. (Docs. 40; 41).

between the policy or custom and the injury alleged."). Plaintiff has not alleged that Corizon deprived him of his constitutional rights pursuant to an official corporate policy or custom.

Alternatively, even if Plaintiff identified any individual wrongdoers, his allegations are insufficient to establish a constitutional violation. Prison officials can be liable under the Eighth Amendment[4] for "deliberate indifference to a substantial risk of serious harm to an inmate." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). The objective component can be met where officials fail to prevent an assault, fail to treat a diagnosed medical condition, or fail to address an injury "that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). The subjective component is met where "the official was subjectively aware of the risk,' . . . and that the official 'recklessly disregard[ed] that risk.'" *Wilson v. Falk*, 877 F.3d 1204, 1209 (10th Cir. 2017) (quotations omitted). "In other words, an official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Howard v. Waide*, 534 F.3d 1227, 1236 (10th Cir. 2008) (quotation marks omitted).

The instant Complaint contains no facts indicating prison officials were subjectively aware that Archibeque posed a risk to Plaintiff. In fact, the allegations suggest Plaintiff and Archibeque got along reasonably well and that the attack was unexpected. Plaintiff contends he stopped by Archibeque's cell to inquire about a remote-control cover Archibeque was making for Plaintiff; Archibeque "waived (sic) [Plaintiff] away as he was busy;" and several minutes later Archibeque

---

[4] Because Plaintiff is a post-conviction prisoner, the Court applies the Eighth Amendment, rather than the Due Process Clause, to his claims. The Due Process clause only applies to claims for cruel and unusual punishment/deliberate indifference when the plaintiff is a pretrial detainee. *See Rife v. Okla. Dep.'t of Pub. Safety*, 854 F.3d 637, 647 (10th Cir.), *cert. denied sub nom.*, 138 S. Ct. 364 (2017); *see also Estate of Booker v. Gomez*, 745 F.3d 405, 429 (10th Cir. 2014).

confronted Plaintiff and initiated the attacked. (Doc. 1-1 at 2.) To the extent Plaintiff complains he was assigned to a cell near Archibeque after the attack, there is no evidence he sustained any harm as a result of the later housing placement. *See Requena v. Roberts*, 893 F.3d 1195, 1214 (10th Cir. 2018) (inmate failed to state a failure-to-protect claim where "there is no allegation that he suffered any harm from that placement"). The Complaint therefore fails to state a constitutional claim based on Archibeque's attack.

Plaintiff also failed to demonstrate a constitutional violation with respect to the medical care following the attack. Although he alleges a guard casually walked by his cell after the attack, it is unclear whether that caused any delay in medical care. The complaint also alleges that for about seven days, medical staff failed to change Plaintiff's bandages and bedsheets; dispense opioid/narcotic pain medication; or place Plaintiff on a soft diet. (Doc. 1-1 at 2, 10–11). These deprivations, while certainly uncomfortable, are not sufficiently serious to constitute cruel and unusual punishment. *See Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001) ("The 'substantial harm requirement' can be met by showing 'lifelong handicap, permanent loss, or considerable pain.'"). Further, even if a hospital doctor prescribed a narcotic pain killer, "[a] difference of opinion with the [prison] medical staff as to the optimal pain-management regimen does not amount to deliberate indifference." *Todd v. Bigelow*, 497 F. App'x 839, 842 (10th Cir. 2012); *see also Wisheneski v. Andrade*, 572 F. App'x. 563 (10th Cir. 2014) (an inmate may not prevail on challenge to medical judgment in substituting other medications for narcotic painkiller); *Johnson v. Richins*, 438 F. App'x. 647, at *1–2 (10th Cir. 2011) (finding no deliberate indifference when prison officials suspended Neurontin and Darvocet prescription).

For these reasons, the Court concludes the Complaint fails to state a cognizable federal

constitutional claim. The Court will, therefore, dismiss the Complaint under § 1915A, but grant Plaintiff's motions to amend (Docs. 40; 41). *See Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990) ("[I]f it is at all possible that the party against whom the dismissal is directed can correct the defect in the pleading or state a claim for relief, the court should dismiss with leave to amend."). Plaintiff may file an amended complaint–which may add Defendants, allegations, and/or claims— within thirty (30) days of entry of this Order. The Court will defer ruling on the sufficiency of Plaintiff's state law claims until after it determines whether any federal constitutional claims survive initial review. If Plaintiff declines to timely file an amended complaint or files an amended complaint that similarly fails to state a cognizable federal claim, the Court will dismiss the case without further notice.

**V.      Remaining Motions**

The parties also filed the following motions in connection with this § 1983 proceeding:

(1) Defendants' motions to dismiss (Doc. 37) and for summary judgment (Docs. 30; 33);

(2) Plaintiff's motion to appoint counsel (Doc. 45); and

(3) Plaintiffs motions for a default judgment (Docs. 31; 44; 47).

Having dismissed the Complaint with leave to amend, the Court finds Defendants' dispositive motions (Docs. 30; 31; 37) are moot. The Court also declines to enter a default judgment. Defendants were not obligated to respond to the Complaint, but in any event, they did respond. *See* 42 U.S.C. § 1997e(g)(1)–(2) (noting a defendant may decline to reply to any action brought by an inmate until the Court orders a response). Finally, the Court (Hon. Stephan Vidmar) already denied Plaintiff's request to appoint counsel, and there are no grounds to depart from that

ruling. All remaining motions (Docs. 30; 31; 33; 37; 44; 47) will therefore be denied.

**IT IS ORDERED** that Plaintiff's Civil Rights Complaint (**Doc. 1-1**) is **DISMISSED** without prejudice pursuant to 28 U.S.C. § 1915A;

**IT IS FURTHER ORDERED** that Plaintiff's motions to amend (**Docs. 40; 41**) are **GRANTED**; and Plaintiff may file an amended complaint within thirty (30) days of entry of this order;

**IT IS FINALLY ORDERED** that all other motions (**Docs. 7; 13; 30; 31; 33; 37; 44; 47**) are **DENIED**.

```
_____
ROBERT C. BRACK
SENIOR U.S. DISTRICT JUDGE
```